**Bezaley Vernon Lewis JACKSON,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–00814–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 6, 2007.

Discretionary Review Refused
June 11, 2008.

Scott H. Pawgan, Habern, O'Neil, Buckley & Lang, LLP, Huntsville, TX, Tom Brown, Livingston, TX, for appellant.

Joe N. Dean, District Attorney, Groveton, TX, for appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

A jury found appellant, Bezaley Vernon Lewis Jackson, guilty of manslaughter. *See* TEX. PEN.CODE ANN. § 19.04 (Vernon 2003). The trial court assessed punishment at 20 years in prison. In his sole issue, appellant contends, "The trial court reversibly erred in refusing to submit to the jury Appellant's requested instructions concerning the lesser included offense of criminally negligent homicide."

We affirm.

## Background

While at appellant's home, appellant and his friend, Johnny Scurlock, got into an argument regarding the money that Scurlock owed appellant. Scurlock asked appellant's neighbor to take him home, stating that appellant was "acting crazy." The neighbor backed his SUV into appellant's driveway, and the neighbor and Scurlock loaded Scurlock's belongings into the vehicle. As they prepared to leave, appellant approached Scurlock outside the vehicle. Appellant had a .22 caliber pistol in his hand. Two shots were fired. Scurlock died within minutes from a gunshot wound to his chest.

Appellant told the officer who arrived at the scene that he and Scurlock had been arguing and that Scurlock had hit appellant in the head knocking appellant to the ground. Appellant stated that he then pulled a gun from his pocket. Appellant told the officer that he and Scurlock struggled over the gun and that the gun fired during the struggle.

The next day appellant gave a recorded statement to another police officer. In the statement, appellant recounted that he and Scurlock had argued over money that Scurlock owed him. Appellant denied that Scurlock had hit him before appellant pulled the gun from his pocket. Instead, appellant stated that he had pulled the gun from his back pocket after Scurlock had verbally threatened to "put somthin' on [appellant's] butt." Appellant told the officer that, after drawing the weapon, he told Scurlock "to git on way from here." According to appellant, Scurlock grabbed the gun in appellant's hand, the two men

struggled, and the gun fired. Appellant claimed that the shooting was accidental.

Several witnesses to the incident testified at trial. Testimony was given that appellant came out of his home as Scurlock was preparing to leave in the neighbor's SUV. Appellant pulled out a gun as he approached the vehicle. The witnesses saw appellant approach Scurlock and point the gun directly at Scurlock at close range. One of the witnesses testified that he heard Scurlock say to appellant, "[D]on't do this." The same witness heard appellant demand that Scurlock pay the money that Scurlock owed before Scurlock left. Scurlock told appellant that he could not pay all of the money that he owed at that time but would pay appellant later.

All of the witnesses testified that they did not see Scurlock hit appellant, and no one saw Scurlock and appellant struggling over the gun. One of the witnesses did testify that he saw Scurlock try to "push" the gun away. That same witness acknowledged that he had told police that he saw the men struggling over the gun before it went off, but clarified at trial that he had seen the men "push" the gun up before it fired, but had not seen an actual struggle over the gun.

Appellant was charged with the offense of murder. At the charge conference, appellant requested that the lesser-included offenses of manslaughter and criminally negligent homicide be included in the jury charge. The trial court granted appellant's request regarding the manslaughter instruction, but denied appellant's request that the jury be instructed regarding criminally negligent homicide. The jury found appellant guilty of manslaughter.

### Entitlement to Criminally Negligent Homicide Instruction

■ In his sole issue, appellant contends that the trial court erred by refusing to instruct the jury on the lesser-included offense of criminally negligent homicide, as requested.

■ A defendant is entitled to an instruction on a lesser-included offense if (1) the lesser offense is a lesser-included offense of the charged offense and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex.Crim.App.2006). We must review all evidence presented at trial to make this determination. *Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App. 1984).

■ Criminally negligent homicide is a lesser included offense of murder. *See Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992); *Lugo*, 667 S.W.2d at 147. Thus, as briefed by the parties, the dispute in this case centers on whether there is some evidence from which the jury rationally could have found that, if appellant was guilty, he was guilty only of the lesser offense of criminally negligent homicide. *See Guzman*, 188 S.W.3d at 188. At this step of the analysis, "the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." *Hall v. State*, 225 S.W.3d 524, 536 (Tex.Crim.App.2007).

■ Criminally negligent homicide involves causing the death of another by criminal negligence. TEX. PEN.CODE ANN. § 19.05(a) (Vernon 2003). Criminal negligence involves inattentive risk creation. *Lugo*, 667 S.W.2d at 147–48; *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App. 1975). The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct. *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). Before a charge on criminally negligent homicide is

required, the record must contain evidence showing an unawareness of the risk. *Mendieta v. State,* 706 S.W.2d 651, 653 (Tex.Crim.App.1986).

Here, we must determine whether the record contains some evidence that would permit a jury rationally to find that appellant did not appreciate the risk that, as a result of appellant's taking the gun from his pocket and pointing it at Scurlock, the gun could discharge and Scurlock could be killed. *See id.* In support of his sole issue, appellant asserts as follows in his appellate brief:

> Appellant admitted getting the pistol out of his pocket after Mr. Scurlock hit him in the head. The only evidence presented was that the gun went off accidentally during the scuffle. Just as there was no evidence concerning Appellant's specific intent, and the jury so found by acquitting Appellant of murder, there is no evidence of his perception of the risk of the gun discharging. The evidence before the jury concerning that risk is subject to more than one inference. There is no evidence of his mental state. An inference could be assumed that Appellant was aware of the risks in producing the pistol after being hit but consciously disregarded same, which would authorized [sic] a conviction for manslaughter. That same lack of evidence, however, is subject to another inference, that he was unaware of the risk of the accidental discharge. Such an inference would authorize the jury to convict Appellant of the lesser included offense of criminally negligent homicide.

The court in *Navarro v. State* rejected a similar argument. 863 S.W.2d 191, 206 (Tex.App.-Austin 1993), pet. ref'd 891 S.W.2d 648 (Tex.Crim.App.1994). The *Navarro* court recognized that the Court of Criminal Appeals in *Saunders v. State* held that an instruction on a lesser-included offense may be required when evidence is subject to different interpretations—one of which supports submission of the instruction. *Id.* at 205–06 (citing *Saunders,* 840 S.W.2d at 392).

As in this case, a firearm was used to kill the complainant in *Navarro. Id.* at 195, 206. The *Navarro* court stressed that a firearm is considered a deadly weapon per se. *Id.* at 206 (citing *Flanagan v. State,* 675 S.W.2d 734, 744 (Tex.Crim.App. 1984)). Writing for the court, retired Presiding Judge Onion, explained, "We do not understand *Saunders* to hold that causing the death of another by the use of a deadly weapon per se is, in itself, an ambiguous act subject to different interpretations regarding the defendant's culpable mental state." *Id.* The court concluded, "Where the defendant kills another person with a deadly weapon per se, more than speculation of this sort is required before the submission of an instruction on ... criminally negligent homicide is necessary." *Id.*

We agree with the reasoning of the *Navarro* court. Evidence that appellant drew a handgun, a deadly weapon per se, from his pocket in response to a threat by Scurlock does not alone raise an inference that appellant was unaware of the risk posed by that conduct. To the contrary, drawing a deadly weapon in response to a physical threat indicates that the actor is not only aware of the risk posed by the weapon, but is choosing to exploit that risk.

■ We are cognizant that appellant's version of the facts characterizes the shooting as an "accident"; however, a showing of accidental discharge does not necessarily raise the issue of criminally negligent homicide. *See Thomas v. State,* 699 S.W.2d 845, 850 (Tex.Crim.App.1985); *see also Simpkins v. State,* 590 S.W.2d 129, 133 (Tex.Crim.App.1979) (holding that evidence of accidental discharge does not nec-

essarily raise issue of criminally negligent homicide, but may raise defense of accident). That is, a showing that the defendant did not intend the result does not automatically entitle him to a charge on criminal negligence. *Trujillo,* 227 S.W.3d at 168. Evidence of accidental discharge may raise an inference that the defendant did not perceive a risk of injury or death, for example, when evidence is also presented that the defendant was not aware that the gun was loaded. *See Levan v. State,* 93 S.W.3d 581, 585 (Tex.App.-Eastland 2002, pet. ref'd). Here, appellant cites neither evidence that he was unaware that the gun was loaded nor evidence otherwise indicating that he did not appreciate the risk posed by the weapon.

A review of the record reveals that evidence was admitted from which it can be inferred that appellant knew that the gun was loaded and from which it can be inferred that he perceived the risk posed by removing the weapon from his pocket and pointing it at Scurlock. In his statement, appellant told the police that he had kept the gun in his pocket all evening, indicating familiarity with the weapon. By his own admission, appellant also removed the gun from his pocket in response to either a verbal or physical threat by Scurlock. Evidence was also presented that appellant used the weapon as a means to coerce Scurlock into paying the money owed to appellant. Such evidence indicates that appellant perceived the risk posed by drawing the weapon from his pocket and choose to disregard that risk.

Because appellant did not present evidence to show that he failed to perceive the risk created by his conduct, and some evidence was presented indicating that he was aware of the risk, the trial court did not err by refusing to instruct the jury on criminally negligent homicide.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.